**TWO PERSHING SQUARE, L.P., a Missouri Limited Partnership, Respondent,**

v.

**Robert M. BOLEY, et al., Appellants.**

**No. WD 55059.**

Missouri Court of Appeals, Western District.

Oct. 20, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 24, 1998.

Application for Transfer Denied Jan. 19, 1999.

636

Thomas J. Fritzlen, Jr., Kansas City, for Respondent.

Sandra L. Schermerhorn, Michael A. Le-Vota, Kansas City, for Appellants.

Before SPINDEN, P.J., and ULRICH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Robert M. Boley, Director of the Department of Assessment of Jackson County, Missouri, and Michael Pendergast, Director of Collections and Ex–Officio Collector of Jackson County, Missouri, appeal the circuit court's judgment: (1) declaring that the Chapter 353[1] tax abatement benefit (the abatement) granted by the City of Kansas City, Missouri, to the respondent, Two Pershing Square, L.P., a Missouri limited partnership, on the property known as Two Pershing Square, was not subject to assessment for county property taxes; (2) permanently enjoining the appellants from considering the value of the abatement in

1. All statutory references are to RSMo 1994, unless otherwise indicated.

determining the assessed value of the property; and (3) ordering them to pay to the respondent $93,712.04 as a refund of taxes paid under protest on the abatement for taxable years 1995 and 1996.

The appellants raise three points on appeal. In their first point, they claim that the trial court erred in declaring that the abatement was not part of the real property subject to assessment. In their second point, they claim that the trial court erred in denying their motion to dismiss respondent's first amended petition because it did not have jurisdiction to hear the petition in that the respondent had not exhausted its administrative remedies prior to seeking relief in the circuit court. In their third point, they claim that the trial court erred in holding that § 353.110, which provides a tax abatement for development projects in blighted areas, expressly prohibited the assessment of the abatement.

We dismiss for a lack of jurisdiction.

### Facts

In 1974, Pershing Square Redevelopment Corporation entered into a contract with the City of Kansas City, Missouri, to develop property in the Union Station area for which it was granted a tax abatement benefit on the subject property pursuant to Chapter 353. The respondent purchased the property in 1984, entitling it to receive the benefit of the abatement granted on the property.

This litigation has its genesis in 1995 when the respondent received its property tax bill from Jackson County which valued the subject property at $44,335,000. The respondent believed that the subject property had been overvalued and sought relief from the Jackson County Board of Equalization (the JCBE), which reduced the assessed valuation of the property to $40,375,000. This decision was appealed by the respondent to the Missouri State Tax Commission (the Commission).

After filing its appeal, the respondent alleges that it learned that the County had included the value of the abatement in the assessed value of the property. As a result, the respondent filed its petition for declaratory judgment and injunctive relief in the Circuit Court of Jackson County, staying the appeal before the Commission. The parties stipulated that the value of the property, without considering the abatement, was $36,151,000 and that the value of the property considering the abatement was $39,754,000. The appellants filed a motion to dismiss the respondent's petition alleging that the trial court lacked jurisdiction to hear the case because the respondent had failed to exhaust its administrative remedies. The motion was denied. After hearing evidence, the trial court declared that the abatement was not subject to assessment, permanently enjoined the appellants from assessing it, and ordered the appellants to refund taxes paid by the respondent on the abatement in 1995 and 1996 plus statutory interest at the rate of 9 percent per annum.

The appellants filed their notice of appeal in the Missouri Supreme Court on October 10, 1997. By order dated October 29, 1997, the supreme court transferred the appeal to this court.

On December 8, 1997, Jackson County sent two checks to the respondent as a refund of the taxes paid under protest in 1995 and 1996. On January 15, 1998, the respondent filed its "Satisfaction of Money Judgment" pursuant to Rule 74.11. The respondent then filed a motion to dismiss the appellants' appeal, which was taken with the case, alleging that the voluntary payment of the judgment rendered their appeal moot.

This appeal follows.

### Discussion

Before we can address the merits of the appellants' claims, we are first required to determine, *sua sponte*, our appellate jurisdiction. *Burch Food Servs., Inc. v. Division of Employment Sec.*, 945 S.W.2d 478, 481 (Mo. App.1997).

■ The Missouri Supreme Court has exclusive appellate jurisdiction over cases involving the construction of revenue laws of this state. Mo. Const., art. V, § 3; *Alumax Foils, Inc. v. City of St. Louis*, 939 S.W.2d 907, 910 (Mo. *banc* 1997). To invoke the supreme court's exclusive jurisdiction, the

case must involve (1) the construction (2) of a revenue law (3) of this state. *Id.* There is no dispute that the first two elements necessary to invoke the supreme court's exclusive jurisdiction are met in the case at bar. The third element, however, has not been met. To be a revenue law "of this state," the law must be "adopted by the general assembly to impose, amend or abolish a tax or fee on all similarly-situated persons, properties, entities or activities in this state, *the proceeds of which are deposited in the state treasury.*" *Id.* (Emphasis added.) Since this case involves property taxes imposed by and paid to the treasury of Jackson County, it does not involve the construction of a revenue law "of this state." As such, this court would have jurisdiction.

We must next address the respondent's motion to dismiss this appeal which was taken with the case. The respondent alleged in its motion to dismiss that this appeal was rendered moot when Jackson County voluntarily refunded the taxes paid on the abatement in 1995 and 1996, thereby satisfying the judgment entered against the appellants. In support of its motion, the respondent relies on *State ex rel. Highway and Transportation Commission v. Christie*, 890 S.W.2d 1, 2 (Mo.App.1994), which held that the "voluntary" satisfaction of a judgment renders any appeal from that judgment moot. *Id.* at 2. The appellants contend that the payment of the judgment here was not voluntary because it was made (1) under threat of execution by the respondent and (2) to avoid the accrual of statutory interest of 9 percent per annum on the judgment as allowed and ordered by the trial court pursuant to § 408.040. Thus, the issue for us to decide, in determining whether this appeal is moot, is whether the payment of the judgment against the appellants was voluntary.

■ "The mootness of a controversy is a threshold question in any appellate review of that controversy." *State ex rel. Chastain v. City of Kansas City*, 968 S.W.2d 232, 237 (Mo.App.1998). A case must be dismissed as moot whenever an event occurs that renders a decision unnecessary. *State ex rel. Garden View Care Ctr. v. Missouri Health Facilities Review Comm.*, 926 S.W.2d 90, 91 (Mo.App.

1996). A party may estop himself from appealing a judgment by performing any acts that are inconsistent with the right to appeal or which recognize the validity of the judgment. *Steen v. Colombo*, 799 S.W.2d 169, 174 (Mo.App.1990). Generally, the voluntary satisfaction of a judgment renders any appeal from that judgment moot. *Christie*, 890 S.W.2d at 2. An involuntary payment, however, does not render an appeal moot. *Id.* at 3 (citing *Lumaghi v. Abt*, 126 Mo.App. 221, 103 S.W. 104, 105–06 (1907)). A payment is considered involuntary when it is made to forestall collection and no supersedeas bond is posted. *Christie*, 890 S.W.2d at 3. A payment is also considered involuntary when it is made after execution or writ of garnishment in aid of execution has issued because it is presumed to have been made as a result of legal coercion. *Kinser v. Elkadi*, 654 S.W.2d 901, 903 (Mo. *banc* 1983). A payment made to cut off the accrual of interest on a judgment is also considered involuntary. *Id.*

■ The appellants contend that the payment of the judgment was involuntary because it was made under a threat of execution and not in recognition of the validity of the judgment of the trial court. However, we agree with the respondent that there was no real threat of execution here. The respondent sued, *inter alia*, to recover taxes paid by it under protest pursuant to § 139.031. As such, any judgment in their favor would be paid by Jackson County. Rule 81.09 provides that the filing of a notice of appeal stays the execution of a judgment against a county without the necessity of posting a supersedeas bond. As such, even assuming, *arguendo*, that the respondent did threaten execution on its judgment, this threat would not amount to legal coercion as there was no legal possibility that the threat could be carried out because any execution was stayed. Thus, the payment of the judgment was not made under a real threat of execution such that the payment of the judgment would be rendered involuntary.

■ The appellants also contend that the payment of the judgment was involuntary because it was made to prevent the accrual of statutory interest of 9 percent per annum on the judgment as ordered by the trial court

pursuant to § 408.040. We agree. The appellants were under a duty to invest the protested taxes pursuant to § 30.260, which they did. This investment earned a return of 6.42 percent in 1995 and 2.27 percent in 1996. In this respect, the appellants contend that the judgment was paid to minimize the County's obligation to pay the statutory interest on the judgment which was in excess of what was being earned through the investment of the taxes paid under protest. Given this fact, it is reasonable to infer that Jackson County paid the judgment, at least in part, to avoid paying the difference between the statutory interest and the investment interest being earned on the taxes paid under protest. On this basis, we find that the payment of the judgment was involuntary and did not render this appeal moot. Thus, the respondent's motion to dismiss this appeal for mootness is denied.

Having dealt with these two preliminary matters, we now turn to the merits.

## I.

In their second point, the appellants claim that the trial court erred in denying their *motion to dismiss respondent's first amended* petition because it did not have jurisdiction to hear it in that the respondent was required to and did not exhaust its administrative remedies prior to seeking relief in the circuit court. Because we find this point to be dispositive of the appeal, we address it alone.

■ Our standard of review for a court-tried case involving an exemption from taxation is pursuant to *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. *banc* 1976). *David Ranken, Jr. Technical Inst. v. Boykins,* 816 S.W.2d 189, 191 (Mo. *banc* 1991). As such, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32. "A court should grant a motion to dismiss for lack of subject matter jurisdiction whenever it 'appears' that the court lacks such jurisdiction. As the term 'appears' suggests, the quantum of proof is not high. It must appear by a mere preponderance of the evi-

dence that the court is without jurisdiction." *State ex rel. J.E. Jones Constr. Co. v. Sanders,* 875 S.W.2d 154, 157 (Mo.App.1994) (citations omitted).

■ "The doctrine of exhaustion of administrative remedies, if applicable, is a jurisdictional requirement. The doctrine requires recourse to an agency for relief as a condition for judicial relief where the agency is empowered to grant relief." *Pessin v. State Tax Comm'n,* 875 S.W.2d 143, 146 (Mo.App. 1994) (citations omitted). A circuit court will not have jurisdiction to hear a petition or render a judgment where administrative remedies were available which were not exhausted. *Id.* This court would also lack jurisdiction to hear an appeal from such a judgment in that " '[a] judgment entered in excess of or beyond the jurisdiction of the trial court is void and an appellate court has no jurisdiction to review on the merits.' " *Sumnicht v. Sackman,* 968 S.W.2d 171, 174 (Mo.App.1998) (*quoting Peters v. United Consumers Club,* 786 S.W.2d 192, 193 (Mo. App.1990)). In this circumstance, the appellate court would be limited to dismissing the appeal and remanding the cause for dismissal by the circuit court. *Id.* at 178.

In claiming that the trial court lacked jurisdiction to hear the respondent's petition because it had not exhausted its administrative remedies prior to seeking judicial review, the appellants contend that the respondent was challenging the decision of the JCBE concerning the valuation of Two Pershing Square and, as such, was required, pursuant to § 138.430.1, to appeal the decision to the Commission. The respondent contends that it was not challenging the decision of the JCBE as to the valuation of the property, but was challenging the assessment of the abatement. Thus, the respondent argues that the issue before the JCBE was one of exclusion or exemption from an assessment which allowed it to proceed directly to the circuit court pursuant to § 138.430.3. From this, the respondent argues that the exhaustion of administrative remedies doctrine did not bar it from proceeding directly to the circuit court because they had a statutory right to do so. We agree that § 138.430.3 allows a direct action to the circuit court where the decision

of the JCBE concerned an exclusion or exemption from assessment. The issue then for us to decide in determining whether the respondent was required to appeal to the Commission, before seeking relief in the circuit court, is whether the decision of the JCBE, as to the respondent's tax appeal, concerned only the valuation of Two Pershing Square or whether it concerned the exclusion or exemption of the abatement from assessment.

Any person who is aggrieved by an assessment of real property taxes may appeal to the county board of equalization pursuant to § 137.275. The proper procedure for appealing from the decision of the board of equalization is determined by the nature of the dispute as set out in § 138.430. *St. Peters Community Hosp. Inc. v. Zimmerman*, 914 S.W.2d 26, 28 (Mo.App.1995). In this respect, § 138.430.1 provides that "[e]very owner of real property ... shall have the right to appeal from the local boards of equalization to the state tax commission ... concerning all questions and disputes involving the assessment against such property, [or] the correct valuation to be placed on such property...." Thus, a taxpayer who wishes to appeal a decision of the board of equalization concerning the correct valuation placed on real property must appeal to the Commission. *Zimmerman*, 914 S.W.2d at 28. Only after exhausting this appeal to the Commission may the taxpayer seek judicial relief, or in other words, after they have exhausted their administrative remedies. *Id.* However, when challenging a decision of the board of equalization "concerning all questions and disputes involving the exclusion or exemption of such property from assessment," an owner of real property may appeal directly to the circuit court. § 138.430.3.

■ A careful review of the record here reveals that the respondent appeared before the JCBE generally alleging that Two Pershing Square had been overvalued. It sought and received from the JCBE a reduction in the assessment on the property. Not being satisfied, the respondent then filed an appeal with the Commission. The issue of whether the abatement was exempt from assessment was never raised at the JCBE hearing.

Thus, because the decision of the JCBE concerned only a dispute involving the correct valuation of the property, the respondent was required to appeal the decision of the JCBE to the Commission before it could seek judicial relief. § 138.430.1.

The respondent contends that, although it was generally appealing the valuation of its property to the JCBE, the real and specific dispute before the board, unbeknownst to it, should have been whether the abatement was subject to assessment. The respondent explains its failure to raise this issue before the JCBE by arguing that the appellants did not inform it that the abatement was being taxed as real property, and had it known that the abatement was being taxed, causing the assessed value of its property to increase, it would have raised the issue in the JCBE hearing. The respondent argues that to require it to exhaust its administrative remedies under these circumstances would deprive it of its statutory right to a direct appeal in the circuit court under § 138.430.3 because it did not know that the abatement was being taxed until the time for filing a direct appeal in the circuit court had run.

■ In making its argument, the respondent implicitly asserts that the appellants had a duty to inform it that the value of the abatement was considered as part of the assessed value of the subject property, so that it would have been on notice to address this issue. The respondent, however, does not cite us to any authority for this proposition. In fact, it is well settled that the assessed value set by the assessor is presumed to be correct, with the burden resting on the taxpayer to rebut it with substantial evidence. *Quincy Soybean Co., Inc. v. Lowe*, 773 S.W.2d 503, 504 (Mo.App.1989). Thus, under its burden of proof, the respondent was required to raise at the JCBE hearing any and all issues that would have entitled it to a reduction in the assessed value of Two Pershing Square, which would necessarily have included the taxability of the abatement.

The respondent's failure to raise the issue of the taxability of the abatement before the JCBE resulted in a decision by the board which concerned only the correct value to be

placed on Two Pershing Square and not whether the abatement should be excluded or exempted from assessment. As such, the respondent could not seek judicial review under § 138.430.3, but was required to appeal the decision of the JCBE to the Commission pursuant to § 138.430.1, which it did. However, it was also required to wait for the Commission to rule on its appeal before seeking judicial review in the circuit court, which it did not do. Because the respondent filed its petition for review in the circuit court before the Commission ruled on its appeal, we find that it failed to exhaust its administrative remedies, thereby depriving the trial court and this court of jurisdiction. *Pessin,* 875 S.W.2d at 146; *Sumnicht,* 968 S.W.2d at 174.

### Conclusion

For the reasons stated, we dismiss this appeal for a lack of jurisdiction and remand the cause to the circuit court with directions to enter its order dismissing the respondent's first amended petition for a lack of jurisdiction for a failure to exhaust administrative remedies.

All concur.