**Pamela J. RUSSUM, Respondent,**

v.

**Gerald E. RUSSUM, Jr., Appellant.**

**No. WD 65741, 65968.**

Missouri Court of Appeals,
Western District.

Feb. 20, 2007.

Dennis J. Cambell Owens, Jeremiah Kidwell, Kansas City, MO, for appellant.

Leonard K. Breon, Carroll G. Leffler, Warrensburg, MO, for respondent.

Before HOWARD, P.J., BRECKENRIDGE and HARDWICK, JJ.

PATRICIA BRECKENRIDGE, Judge.

Gerald E. Russum (Husband) appeals the judgment of the trial court dissolving his marriage to Pamela J. Russum (Wife). Husband also appeals from the judgment of the trial court awarding Wife attorney's fees on appeal. The two appeals have been consolidated for purposes of this proceeding. In Husband's points on appeal, he asserts that the trial court erred in awarding Wife maintenance in the amount of $550 a month because the uncontroverted evidence showed that Husband did not have the ability to pay and there was not substantial evidence of Wife's living expenses. He also claims the trial court erred in awarding Wife twenty-five percent of Husband's 401(k) retirement ac-

count because that division was not equitable since Husband was ordered to pay all of the marital debt. He further claims that the trial court erred in awarding Wife attorney's fees for both the dissolution action and the appeal because Husband cannot afford to pay the awards and his greater income alone does not justify the awards. Finally, he claims that there was not substantial evidence to support the award for attorney's fees on appeal. This court finds that the trial court did not err in awarding Wife maintenance in the amount of $550 a month or in awarding Wife twenty-five percent of Husband's 401(k) retirement account. This court further finds that the trial court did not err in awarding Wife attorney fees in both the dissolution action and on appeal. Finding no error, the judgment of the trial court is affirmed.

### Factual and Procedural Background

Husband and Wife were married on September 19, 1977, in Archie, Missouri. One child was born of the marriage, and Husband adopted Wife's two children from a previous marriage or relationship. All were emancipated at the time of trial. Prior to the parties' separation, Husband had an extramarital affair. The parties separated on June 10, 2004, and Wife filed her petition for dissolution of marriage on June 18, 2004. During the pendency of the dissolution action, the court awarded Wife $800 a month in temporary maintenance.

The parties executed a separation agreement that divided all of the parties' assets except Husband's 401(k) retirement account. The parties also agreed that Husband would pay all of the parties' marital debt. In addition to being unable to agree

on the division of Husband's 401(k) retirement account, the parties could not agree on Wife's requests for maintenance and attorney's fees. Therefore, at the trial held on April 28, 2005, the contested issues were the division of Husband's 401(k) retirement account and Wife's requests for maintenance and attorney's fees.

The trial court entered its initial judgment dissolving the parties' marriage on June 9, 2005, and entered a judgment entry nunc pro tunc on June 20, 2005. In its judgment, the trial court found the parties' separation agreement to be fair and not unconscionable and divided the marital property as per the separation agreement. The court also ordered division of Husband's 401(k) retirement account. The trial court awarded Wife $3115 in personal property and twenty-five percent of the equity in Husband's 401(k) retirement account, which it valued at $6793.[1] The total property Wife received under the judgment was $9908. Husband was awarded $5375 in personal property, $1000 in other household goods and personal property, $2800 in cash, the marital home, and seventy-five percent of the equity in his 401(k) retirement account, which the court valued at $20,377. The total value of the property awarded to Husband was $29,552. As per the separation agreement, Husband was ordered to pay the parties' marital debt of $15,211. Subtracting the debt of $15,211 from the gross total of Husband's property award of $29,552, the net award to Husband was $14,341. The trial court also ordered Husband to pay modifiable maintenance to Wife in the amount of $550 per month and $3000 of Wife's attorney's fees. Husband appealed.

Thereafter, Wife filed a motion asking the trial court to award her attorney's fees

1. While the dissolution action was pending, Husband borrowed $16,384 from his 401(k) retirement account. In dividing the 401(k) retirement account, the trial court subtracted Husband's loan from the total value and divided the net proceeds.

for the appeal. The trial court heard evidence on Wife's motion and, on September 14, 2005, awarded Wife $6000 in attorney's fees on appeal. The court ordered Husband to pay that amount on or before November 15, 2005. Husband appealed the award of attorney's fees. On November 17, 2005, Husband paid Wife the $6000 in attorney's fees and Wife filed a Satisfaction of Judgment. Wife later filed in this court a motion to dismiss Husband's appeal of the award of attorney's fees on appeal, alleging that Husband's voluntary payment of the judgment rendered moot his appeal from the award of attorney's fees on appeal.

### No Error in Awarding Maintenance

■ In his first point on appeal, Husband claims that the trial court erred in awarding Wife monthly maintenance in the amount of $550 because he is unable to meet his needs while meeting the needs of Wife. Husband contends that an award of maintenance can only be made when there is a showing that Husband is financially capable of paying the maintenance award. Husband asserts that his net income was insufficient to bear all of the marital debt in addition to maintenance payments to Wife. In his second point on appeal, Husband claims that the trial court erred in awarding Wife monthly maintenance in the amount of $550 because Wife failed to adduce sufficient evidence of her actual reasonable needs. Husband argues that there was no credible evidence of Wife's actual anticipated living expenses and, therefore, an award based on her ability to meet her reasonable needs could not be competently made. Because Husband's first and second points on appeal challenge the trial court's award of maintenance, they will be addressed together.

■ "The trial court has broad discretion in awarding maintenance, and its decision will not be overturned absent an abuse of discretion." *Hammer v. Hammer,* 139 S.W.3d 239, 240 (Mo.App. W.D. 2004). In determining whether the trial court abused its discretion, this court reviews the evidence in the light most favorable to the judgment of the trial court, disregarding all contrary evidence. *Id.* Deference is given to the judgment of the trial court even if the evidence could support a different conclusion. *Id.*

Section 452.335, RSMo 2000,[2] governs awards of maintenance in dissolution actions. Under that statute, the court may award maintenance if it finds that the spouse seeking maintenance meets the following threshold requirements:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Section 452.335.1.

During the parties' twenty-seven-year marriage, Wife was primarily a stay-at-home mother and housekeeper, with brief periods of employment where she earned minimum wage. In the years 1977 through 2005, Wife earned $1316 in 1993, $1171 in 1994, and $1852 in 2000. Wife was unemployed at the time of trial. The evidence regarding Wife's employability is that she is fifty-five years old and has a ninth grade education and a GED. Wife has no work-related training and no computer or clerical skills. Wife does not have a driver's license and relies on others for transportation. Wife has had two knee

---

**2.** All statutory references are to the Revised Statutes of Missouri 2000.

replacements and she suffers from chronic bronchitis, asthma, and degenerative disc disease.

Husband provided the income for the family. For the last sixteen years of the parties' marriage, Husband was employed as a machinist at R & D Tool and Engineering. In the three years prior to the dissolution, Husband earned $49,248, $46,514, and $50,268. At the time of trial, Husband had a monthly income of $3900.

At trial, Wife offered into evidence her income and expense statement and gave testimony regarding her reasonably anticipated monthly expenses. Wife testified that, at the time of trial, she paid $375 a month to rent a trailer twelve miles outside of Warrensburg, but that she wanted to move to Warrensburg and anticipated that the rent for an apartment would be $450 a month. Wife's income and expense statement listed her monthly utility expense as $239. Wife testified that this figure was what she reasonably anticipated the utility expenses would be for an apartment, based on what she was paying for utilities at the trailer park. Wife also testified that because she does not drive and does not have a driver's license, she would incur monthly transportation expenses for payments to the persons who drive her. There was additional testimony from Wife as to her expenses for health and life insurance, prescription medications, food, clothing, and entertainment. The total of Wife's monthly living expenses was $1667. Wife testified that she had no income to meet her reasonable needs aside from the $800 in temporary monthly maintenance.

Based on her income and expense statement and Wife's testimony regarding her anticipated expenses, the trial court found that Wife's reasonable needs were approximately $1400 per month and that Wife lacked sufficient property, including the marital property apportioned to her, to provide for her reasonable needs. Despite Wife's work and health history, the trial court also found that Wife was able to work nearly forty hours per week at minimum wage. Nevertheless, the trial court ultimately found that Wife was unable to support herself through appropriate employment, thereby entitling her to an award of maintenance in the amount of $550 a month.

Considering Husband's second claim of error first, Husband contends that the trial court's award of maintenance to Wife should be reversed because Wife "failed to disclose to the court her true anticipated monthly expenses." Husband claims that Wife testified that her expenses for rent and utilities would be between $650 and $700 a month, despite the fact that Wife knew she would be moving in with her daughter where her only expense would be a $100 phone bill that she agreed to pay in exchange for housing. In so arguing, Husband relies on Wife's testimony at the subsequent hearing on Wife's motion for attorney's fees on appeal. Wife testified at that hearing that, although she knew at the time of the dissolution hearing that she would be moving out of the trailer and in with her daughter and that her expenses would be changing, she did not tell the court of that plan.

Husband's claim that there was not substantial credible evidence to support the trial court's award of maintenance is based on Wife's subsequent testimony at the hearing on her request for attorney's fees on appeal. Because that evidence was not before the trial court when it adjudicated the issue of maintenance, it is not considered on appeal. *Parker v. Parker*, 971 S.W.2d 878, 880 (Mo.App. E.D.1998). Because there was sufficient evidence at trial of Wife's living expenses, the trial court did not err in finding that Wife's

reasonable needs were approximately $1400 per month. Consequently, the trial court did not err in finding that Wife lacks sufficient property and is unable through appropriate employment to provide for her reasonable needs.

■ Husband also claims that the trial court erred in awarding Wife monthly maintenance in the amount of $550 because he is unable to meet his needs while meeting the needs of Wife. Husband is correct that his ability to meet his needs, while meeting those of Wife, is to be considered. Section 452.335.2(8). In Section 452.335.2, the legislature set out the factors the trial court must consider when determining the amount and duration of an award of maintenance:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

"The detrimental effect of the withdrawal of a spouse from the job market to assume the duties of a homemaker which cause the spouse to be unable to provide for his or her reasonable needs is also a sound basis for an award of maintenance." *Klein v. Klein*, 837 S.W.2d 567, 570 (Mo.App. W.D. 1992).

Here, the trial court found that Wife's reasonable needs are approximately $1400 per month. Despite imputing income to Wife, the trial court found that Wife lacks sufficient property, including the marital property apportioned to her, to provide for her reasonable needs. The trial court also found that although Wife is capable of maintaining gainful employment at or near a full-time basis at minimum wage, Wife is unable to fully support herself through appropriate employment. The trial court expressly stated in the judgment that, in awarding Wife $550 in modifiable maintenance per month, it "considered all of the relevant factors as provided by law, ... giving particular consideration to [Wife's] limited financial resources and limited ability to meet her needs independently, the comparative earning capacity of each spouse, the duration of the marriage, the unsecured joint debt to be paid by [Husband], and *the ability of [Husband] to meet his needs while meeting the needs of Wife.*" (Emphasis added.)

■ While Husband claims that his net income is insufficient to bear all the marital debt in addition to the maintenance payments to Wife, "[t]he responsibility for all or almost all the marital debt does not preclude the court from awarding maintenance to Wife." *Wallace v. Wallace*, 839 S.W.2d 354, 358 (Mo.App. W.D.1992). The evidence presented at trial was that Hus-

band is employed full time, earning approximately $3900 per month. Wife only has the ability to earn minimum wage. "When Husband's ability to pay is balanced against Wife's striking inability to meet her reasonable needs, the balance tilts in favor of maintenance." *Id.*

Additionally, at the time of separation, the parties owed $15,211 in debt. Husband consolidated all of the marital debts into a credit card debt to Capitol One, with a monthly payment of $445. The only other debt that Husband agreed to pay was the mortgage on the parties' residence of $70,000, with a monthly payment of $536. The other debts that Husband claims he must pay are debts that Husband incurred after the date of separation. Husband borrowed $1500 from Wells Fargo to buy a bed. He obligated himself to pay approximately $86 per month on that debt. Additionally, Husband borrowed $16,384 from his 401(k) retirement account and agreed to repay that debt by paying $77 per week. In determining Husband's ability to pay maintenance, the trial court could consider that Husband unilaterally increased the amount of debt to be repaid, correspondingly reducing the amount available to pay maintenance. *See generally Smith v. Smith,* 739 S.W.2d 562, 565 (Mo.App. E.D.1987) (trial court free to believe that husband inflated his expenses and incurred debt to undermine his financial ability to pay maintenance).

Husband argues that he "was forced to borrow over $16,000 from his employee 401(k) retirement account in order to meet the temporary maintenance order issued by the trial court" as evidence that his income is insufficient to pay maintenance and meet his own living expenses. Husband's evidence at trial, however, was that Husband used only $3200 of the loan proceeds for temporary maintenance payments to Wife. Husband testified that he kept a portion of the proceeds on hand, $2800, and used the remainder for his legal fees, mortgage payments on the marital residence, repairs to his vehicle, purchase of a washer, dryer, and tables to replace those taken by Wife, repayment of debt, and living expenses. The trial court could have disbelieved Husband's testimony that his borrowing of $16,000 was compelled by the payment of maintenance and other marital debts. *Wallace,* 839 S.W.2d at 356. For example, Husband testified that the woman with whom he had had an affair, her husband, and her eighteen show dogs lived with him for four months. During this time, they did not contribute to the household expenses other than food.

Husband also claims that he lacks the ability to pay maintenance based on his monthly living expenses. The record does not show what the trial court believed were Husband's monthly living expenses because the trial court did not make any finding regarding Husband's monthly living expenses. Because there was no request for written findings of fact, this court considers the trial court to have made findings consistent with its judgment. Rule 73.01(c). Therefore, we presume that the trial court did not believe that Husband's living expenses were as high as he testified. Because the trial court properly considered all of the statutory factors and the evidence supports the trial court's findings, the trial court did not err in awarding Wife maintenance in the amount of $550 per month.

### No Error in Dividing Marital Property

In his third point on appeal, Husband claims that the trial court erred in awarding Wife twenty-five percent of his 401(k) retirement account because the trial court failed to consider the disposition of marital debt in its division of marital property. Specifically, Husband asserts that the trial

court should have awarded him the entire 401(k) retirement account because he agreed to be responsible for all the marital debt.

■■■ In a proceeding for division of property, the trial court is required to make an equitable division of the parties' marital property after considering all relevant factors. *Foraker v. Foraker*, 133 S.W.3d 84, 100 (Mo.App. W.D.2004). The trial court has substantial discretion in dividing marital property, and appellate courts will not interfere unless the division is so heavily weighted in favor of one party to amount to an abuse of discretion. *Id.* The trial court abuses its discretion only if its " 'ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *Id.* (citation omitted). This court presumes that the trial court's division of marital property is correct. *Id.* On appeal, the party challenging the division has the burden of overcoming this presumption. *Id.*

■■■ The trial court is not required to divide marital property equally between the parties. *Id.* In making a division, the court is to consider "all relevant factors," including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

Section 452.330.1.

■■■ In dividing the parties' marital property, the trial court approved their separation agreement, finding it was fair and not unconscionable. The separation agreement divided all of the parties' property other than Husband's 401(k) retirement account and provided that Husband would pay all of the parties' debts. In dividing Husband's 401(k) retirement account, the trial court valued it at $43,554. Since the account was subject to the indebtedness incurred by Husband in the amount of $16,384, however, the parties' equity in the account was $27,170. The trial court awarded Wife twenty-five percent and Husband seventy-five percent of that equity, valued at $6793 and $20,377, respectively.

Under the judgment, Wife received $3115 in personal property and twenty-five percent of Husband's 401(k) retirement account, valued at $6793, for a total of $9908. Husband was awarded $5375 in personal property, $1000 in personal property purchased with marital assets after the parties' separation, $2800 in cash remaining from his retirement account loan, and seventy-five percent of the equity in his 401(k) retirement account, $20,377. Husband was also awarded real estate with a fair market value of $76,500, subject to a secured indebtedness of $70,750. The trial court found that there was no liquid equity in the real estate and attributed no value to the real estate in dividing the marital property. Under the agreement that Husband be responsible for all the marital debt, the trial court ordered him to pay the $15,211 debt.

Even taking into account the order that Husband pay $15,211 in marital debt, Hus-

band received fifty-nine percent of the marital property and Wife received forty-one percent. Husband also admitted to having an extramarital affair in the months before the parties separated. At best, Wife will be able to maintain full-time employment earning minimum wage. In contrast, Husband has an established job history and earns $3900 a month. In light of the division of the remainder of the parties' property, the parties' economic circumstances, and Husband's conduct during the marriage, the trial court did not abuse its discretion in awarding Wife twenty-five percent of Husband's 401(k) retirement account.

### No Error in Awarding Attorney's Fees on Dissolution

In his fourth point on appeal, Husband claims that the trial court abused its discretion in awarding attorney's fees to Wife for the dissolution action and the resulting appeal. Specifically, Husband contends that there was no showing that he is able to pay Wife's attorney's fees and the fact that he has a greater income than Wife does not, by itself, justify an award of attorney's fees to her. Because Husband's fifth point claims error in the trial court's award of attorney's fees on appeal, the portion of Husband's fourth point challenging the award of attorney's fees on appeal will be addressed in conjunction with Husband's fifth point.

 Missouri law permits, but does not require, the trial court to award attorney's fees in a dissolution action. *See* Section 452.355.1. Under section 452.355.1:

Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in the attorney's name.

This court presumes that the trial court considered all of the factors under section 452.355.1, and Husband, as the complaining party, bears the burden of overcoming that presumption. *Sullivan v. Sullivan,* 159 S.W.3d 529, 542 (Mo.App. W.D.2005).

 In awarding fees under section 452.355, " '[t]he trial court is, of course, an expert on the issue of attorney's fees and may independently determine and award such fees as it deems appropriate.' " *Id.* (citation omitted). "The trial court's decision as to a request for an award of attorney's fees is presumptively correct." *Id.* "This court will not reverse a trial court's decision as to an award or denial of attorney's fees pursuant to [section] 452.355, unless we find that the court abused its discretion." *Id.* An abuse of discretion occurs if "the award was clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of deliberation." *Clark v. Clark,* 101 S.W.3d 323, 330–31 (Mo.App. E.D.2003).

 In this case, the trial court ordered Husband to pay $3000 of Wife's attorney's fees. Wife's evidence at trial was that she had incurred attorney's fees of $3,768.43, but that she had paid $500 of that amount. There was also evidence that Husband used $3000 in marital funds to pay his attorney's fees for trial. Husband asserts that he is unable to pay

Wife's attorney's fees because the trial court ordered him to pay all of the parties' marital debt and maintenance to Wife.

Although the trial court ordered Husband to pay all of the parties' marital debt and maintenance to Wife, Husband has a substantially greater income than Wife. "One spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse." *In re Marriage of Maninger,* 106 S.W.3d 4, 13 (Mo.App. E.D.2003). Husband is employed earning $3900 per month. Wife is able to earn only minimum wage and relies on Husband's monthly maintenance payments to meet her reasonable needs. "A trial court may also consider a spouse's conduct during the marriage in determining attorney's fees." *Id.* At trial, Husband acknowledged that he had engaged in an extramarital affair prior to the parties' separation and the evidence supports a finding that Husband's affair contributed to the demise of the relationship. Based on Husband's greater ability to pay and Husband's conduct during the marriage, the trial court did not err in ordering Husband to pay Wife $3000 in attorney's fees.

## No Error in Awarding Attorney's Fees on Appeal

Prior to considering the merits of Husband's claims of error in the trial court's award of attorney's fees on appeal, this court must address Wife's motion to dismiss Husband's appeal of the award,[3] which was taken with the case. In her motion to dismiss, Wife asserts that the issue of the trial court's award to her of

attorney's fees on appeal is moot because, on November 15, 2005, Husband voluntarily tendered to Wife's attorney a check in the amount of $6000, thereby satisfying the judgment against him. Specifically, Wife contends that because Husband paid the judgment on November 15, 2005, before the stay of judgment lapsed, there was no legal possibility that a threat of execution or garnishment could be carried out during the term that the execution was stayed. Therefore, Wife argues that Husband's payment of the judgment during the term of the stay was voluntary.

" 'The mootness of a controversy is a threshold question in any appellate review of that controversy.' " *Two Pershing Square, L.P. v. Boley,* 981 S.W.2d 635, 638 (Mo.App. W.D.1998) (citation omitted). "A case must be dismissed as moot whenever an event occurs that renders a decision unnecessary." *Id.* A party is estopped from appealing a judgment when he performs "any acts that are inconsistent with the right to appeal or which recognize the validity of the judgment." *Id.* In general, the "voluntary satisfaction of a judgment renders any appeal from that judgment moot." *State ex rel. Mo. Highway & Transp. Comm'n v. Christie,* 890 S.W.2d 1, 2–3 (Mo.App. W.D.1994). "An involuntary payment, however, does not render an appeal moot." *Two Pershing Square,* 981 S.W.2d at 638. The payment of a judgment to forestall collection is an "involuntary payment when the judgment is appealed without executing a supersedeas bond." *Christie,* 890 S.W.2d at 3.

Wife relies on *Two Pershing Square* in claiming that Husband's pay-

---

3. Wife did not file a motion to dismiss. Instead, Wife raised the issue of mootness in "Respondent's Suggestions In Opposition To Appellant's Motion For An Extension of Time Within Which to File the Record on Appeal." Because "[a] pleading is judged by its subject

matter not its caption," *State ex rel. AG Processing Inc. v. Thompson,* 100 S.W.3d 915, 920 (Mo.App. W.D.2003), this court will consider Wife's suggestions in opposition as a motion to dismiss.

ment of the judgment, here, was voluntary because it was made on November 15, 2005, the final day of the stay. In *Two Pershing Square*, after filing its notice of appeal of a judgment entered against it, Jackson County refunded taxes paid under protest on an abatement. 981 S.W.2d at 637. This court held that because the payment of the judgment was made during a stay of execution, it was not made under threat of execution and, thus, was not involuntary. *Id.* at 638. The court further found that, even if execution were threatened, "Rule 81.09 provides that the filing of a notice of appeal stays the execution of a judgment against a county without the necessity of posting a supersedeas bond," so "this threat would not amount to legal coercion as there was no legal possibility that the threat could be carried out because any execution was stayed." *Id.*

In this case, unlike *Two Pershing Square*, execution was a legal possibility. On September 20, 2005, following the trial court's September 14, 2005 judgment awarding Wife attorney's fees on appeal, Husband filed a notice of appeal without posting a supersedeas bond. Because Husband did not file a supersedeas bond, once the stay on the judgment expired, Wife was free to levy execution on the judgment. Previously, Wife had filed a garnishment action against Husband to collect the $3000 judgment for her attorney's fees at trial. To avoid another execution of judgment and to forestall collection, Husband paid the $6000 judgment on the final day of the stay. Because Husband appealed the judgment without executing a supersedeas bond and the judgment was paid to forestall collection, Husband's payment was involuntary. *Christie*, 890 S.W.2d at 3. Therefore, the issue of the trial court's award of attorney's fees on appeal to Wife is not moot for purposes of this appeal and, therefore,

this court now turns to the merits of Husband's claim.

In his fourth and fifth points on appeal, Husband claims that the trial court erred in awarding Wife attorney's fees on appeal because there was no evidence that Husband is able to pay Wife's attorney's fees and Wife failed to put on evidence that could be used to determine a reasonable and accurate attorney's fee. Husband claims that the fact that he has a greater income than Wife does not, by itself, justify an award of attorney's fees and that Wife failed to present evidence of the services to be rendered by counsel and the expense of those services.

Section 452.355.1 provides that the trial court "after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action" may order the party to pay the other party's attorney's fees. Under section 452.355.1, the trial court may award attorney's fees on appeal of a dissolution decree. *Travis v. Travis*, 174 S.W.3d 67, 70 (Mo.App. W.D.2005). "A party seeking attorney's fees on appeal must show the extent of the necessary services to be rendered by counsel, and the expenses related thereto, so that the trial court may make an award based on evidence of such services and expenses." *Id.* at 72. Additionally, "[t]he trial court is considered an expert on the necessity, reasonableness, and value of attorney's fees." *Id.* at 71. The trial court's award of attorney's fees is presumptively correct and this court will reverse the award of the trial court only upon a showing that the trial court has abused its discretion. *Id.* An abuse of discretion is established where it is shown "that the award is against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.*

■ At the hearing on Wife's motion for attorney's fees on appeal, Wife's attorney, Mr. Breon, testified regarding the services to be performed by counsel and the expenses related thereto. Mr. Breon testified that he had handled fifty appeals and had experience in "handling" domestic relations matters on appeal. He testified that his hourly rate was $175 an hour and that, based on his experience, he did not feel that anyone could competently do an appeal in less than sixty hours. Mr. Breon further testified that after reviewing Wife's file and the notice of appeal and taking into consideration Wife's financial circumstances, he discounted the charge to Wife to $6000. The reasonableness of this sum was also shown by the evidence that Husband paid $18,000 for his representation on appeal. The trial court found that the sum of $6000 was "reasonable and necessary" to provide for Wife's representation and ordered Husband to pay to Wife $6000 for her attorney's fees, on or before November 15, 2005. Mr. Breon's testimony regarding the extent of his services and the expenses related thereto was sufficient to support the trial court's finding that the sum of $6000 was "reasonable and necessary" to provide for Wife's representation on appeal.

Again, Husband claims that the fact that he has a greater income than Wife does not, by itself, justify an award of attorney's fees. As stated above, "[o]ne spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse." *Maninger*, 106 S.W.3d at 13. "A trial court may also consider a spouse's conduct during the marriage in determining attorney's fees." *Id.* Husband admittedly engaged in an extramarital affair prior to the parties' separation, which contributed to the demise of the parties' marriage. In addition, the merits of the case should be considered in determining whether to award attorney's fees

on appeal. *Travis*, 174 S.W.3d at 73. The trial court could have foreseen that Husband's appeal would lack merit. Based on Husband's greater ability to pay, Husband's conduct during the marriage, and the merits of the case, the trial court did not abuse its discretion in ordering Husband to pay Wife $6000 in attorney's fees on appeal.

The judgment of the trial court is affirmed.

All concur.